NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANDRE B. CHRISTIE and ROSALIND CHRISTIE, his wife, | |
| Plaintiffs, | Civ. No. 04-5978 (HAA) |
| -v- | **OPINION & ORDER** |
| PUBLIC SERVICE ELECTRIC AND GAS COMPANY, HUGH D. SWEENEY, JEFF HILA, LOCAL UNION 94 of the INTERNATIONAL BROTHERHOOD of ELECTRICAL WORKERS, TOM MAGUIRE, CHIP GERRITY, and INTERNATIONAL BROTHERHOOD of ELECTRICAL WORKERS, | |
| Defendants. | |

Anthony J. Riposta, Esq.
432 Ridge Road
North Arlington, New Jersey 07031-5315
*Attorney for Plaintiffs*

Patrick R. Westerkamp, Esq.
80 Park Plaza T-5E
Newark, New Jersey 07101
*Attorney for Defendant*
*Public Service Electric and Gas Company*

Paul A. Montalbano, Esq.
Cohen, Leder, Montalbano & Grossman
1700 Galloping Hill Road
Kenilworth, New Jersey 07033
*Attorneys for Defendants Hugh D. Sweeney, Jeff Hila, Local Union 94, Tom Maguire, Chip Gerrity, and International Brotherhood of Electrical Workers*

1

**<u>ACKERMAN</u>, Senior District Judge:**

This matter comes before the Court on three separate motions: a motion by Plaintiff,[1] Andre B. Christie ("Christie"), to remand this matter to state court (Docket No. 5); a motion by Defendants Local Union 94 of the International Brotherhood of Electrical Workers ("Local 94"), Tom Maguire and Chip Gerrity (the "Local 94 Defendants") to dismiss Christie's claims against such defendants (Docket No. 12); and a motion filed by Defendant Public Service Electric and Gas ("PSE&G") to dismiss Christie's claims against PSE&G (Docket No. 11). For the following reasons, Christie's motion to remand is DENIED. The Local 94 Defendants' motion to dismiss is deferred for further consideration, as the Court will convert the motion to dismiss into a motion for summary judgment and will provide the parties an opportunity to submit any additional briefs, affidavits or other filings that the parties deem necessary for the summary judgment motion. PSE&G's motion to dismiss the claims against it is DENIED.

*Background*

In this action, Christie, a former PSE&G employee, asserts claims against PSE&G, the International Brotherhood of Electrical Workers ("IBEW") and Local 94 of the IBEW, the collective bargaining agent for Christie. PSE&G and Local 94 are parties to a collective bargaining agreement that governs the terms and conditions of employment for PSE&G employees. Christie was terminated from his position as a Grade I Lineman on November 12, 2002, allegedly for evading a random drug test on November 6, 2002. Several months before, in

---

[1] As noted below, Christie's wife, Rosalind Christie, withdrew her claims in this action shortly after removal to this Court. Accordingly, this Court will refer to Christie as a singular "Plaintiff."

late August 2002, Christie had received inpatient treatment for drug addiction. Christie completed treatment and was discharged and authorized to return to work on or about September 26, 2002.

According to Christie, upon his return to employment on or about October 3, 2002, PSE&G and Christie entered into what Christie alleges to be a "written employment agreement," which according to Christie, "provided in essence that Christie's employment as a Grade I Lineman was secure but subject to drug and alcohol testing during the ensuing three year period." (Am. Compl. ¶ 33.) The nature of this document is in some dispute, as Defendants counter that the October 3, 2002 letter was not a separate employment agreement, as Christie insists, but rather was a "three year letter." According to the Defendants, a "three year letter" is a notification to an employee who has tested positive for drugs or alcohol in violation of company policy that they are subject to the terms of a collectively-bargained-for "Agreement on Alcohol and Drug Testing for IBEW Represented Employees" (the "Drug Testing Agreement"), and may avoid termination by abiding by the terms of the Drug Testing Agreement. Under the Drug Testing Agreement, employees are required to successfully complete drug addiction treatment and submit to random drug testing for a three-year period after completion of treatment.

On November 6, 2002, Christie alleges that his supervisors, Hugh D. Sweeney ("Sweeney") and Jeff Hila ("Hila") requested that he submit to a drug test. Christie alleges that his son was ill and in need of medical attention on that day, and that his son's illness constituted a family medical emergency. Christie asserts that he was forced to make a "moral choice" between taking the drug test and providing his son with access to medical attention. Christie chose to take his son to a doctor on November 6, 2002, and did not submit to the drug test. On

November 7, 2002, Christie returned to PSE&G and brought Sweeney and Hila a doctor's note confirming that his son was treated on November 6, 2002. Christie alleges that Sweeney and Hila told him to go home and take care of his son and return to work when his son was feeling better. Christie did not return to work until November 12, 2002. On that day, Sweeney and Hila advised him that he was being terminated because he evaded the drug test.

Christie commenced an action in the Superior Court, State of New Jersey, Essex County on November 10, 2004 by way of a Complaint and Jury Demand asserting claims against PSE&G, Sweeney and Hila (the "Employer Defendants"), the IBEW and the Local 94 Defendants. Two days after filing the original Complaint, Christie filed a First Amended Complaint as of right, adding an additional claim against the Employer Defendants for breach of the alleged "written employment agreement" of October 3, 2002.

In his pleadings, Christie asserts claims against the Employer Defendants alleging that: 1) his discharge was discriminatory in violation of the New Jersey Law Against Discrimination ("NJLAD"), N.J. Stat. Ann. §§10:5-1 to 10:5-42, because he was allegedly discharged due to his status as a recovering drug addict; 2) the discharge was in violation of the New Jersey Family Medical Leave Act ("NJFMLA"), N.J. Stat. Ann. §§ 34:11B-1 to 34:11B-16, because the discharge occurred despite the fact that Christie's son's illness allegedly caused Christie's failure to take the drug test; and 3) the discharge was in breach of the "written employment agreement" of October 3, 2002 because the Employer Defendants discharged Christie "premised on the incorrect, inaccurate, false and misleading allegation that Christie deliberately evaded the drug test." (Am. Compl. ¶ 38.)

4

Christie also asserts claims against the IBEW and certain individual representatives, as well as the Local 94 Defendants, alleging violations of the NJLAD and the NJFMLA, as well as violation of the IBEW Constitution and the Local 94 bylaws.  Christie's Complaint also asserted *per quod* claims on behalf of Christie's wife, but those claims have been withdrawn, as indicated by Christie's counsel.  (Pl.'s Br. Opp'n Mot. Dismiss 2.)  Likewise, Christie has dropped his claims against the IBEW, although his claims against the Local 94 Defendants remain.  *Id.*

The Local 94 Defendants, joined by PSE&G, removed Christie's action to this Court on or about December 6, 2004, asserting that Christie's claims against IBEW and the Local 94 Defendants constituted claims for breach of the duty of fair representation governed by Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a).  Moreover, the Local 94 Defendants also argue that the LMRA completely preempts Christie's NJLAD and NJFMLA claims against them, and point out that Christie's duty of fair representation claims against them, coupled with Christie's wrongful discharge claims against PSE&G, constitute a "classic hybrid duty of fair representation/wrongful discharge claim" under 29 U.S.C. § 185(a).  (Local 94 Defs.' Br. Opp'n Mot. Remand 8.)

On December 16, 2004, Christie moved for remand of the action to state court.  The defendants opposed remand, and the Local 94 Defendants simultaneously moved to dismiss Christie's claims against them on the grounds that Christie's duty of fair representation claims are subject to a six-month statute of limitations and are consequently time-barred.  PSE&G has also moved to dismiss Christie's claims against the Employer Defendants on the grounds that Christie has not stated a claim under the NJLAD, the NJFMLA, or for breach of what Christie characterizes as the "written employment agreement" of October 3, 2002.

5

*Analysis*

**I.      Christie's Motion for Remand**

It is axiomatic that federal district courts are courts of limited jurisdiction. Various statutes define bases for federal jurisdiction in particular circumstances. Of particular relevance to this case, Section 1331 of Title 28 of the U.S. Code defines a district court's original jurisdiction over claims arising under federal laws, and Section 1367(a) permits a district court with original jurisdiction over one or more claims in an action to exercise supplemental jurisdiction over "all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy . . . ." Subsection (c) of 28 U.S.C. § 1367 describes four situations in which a district court may nevertheless decline to adjudicate supplemental claims: 1) the supplemental claims present novel or complex issues of state law; 2) the supplemental claims substantially predominate over "original jurisdiction" claims; 3) the court has dismissed all "original jurisdiction" claims; and 4) in certain "exceptional circumstances." 28 U.S.C. § 1367(c).

In addition, in cases removed to federal court from state court pursuant to 29 U.S.C. § 1441, a district court has discretion to retain jurisdiction over supplemental claims, or remand such claims to state court, pursuant to 29 U.S.C. § 1441(c). That section provides:

> [w]henever a separate and independent claim or cause of action within the jurisdiction of 1331 of this title is joined with one or more otherwise non-removable claims or causes of action, the entire case may be removed and the district court may determine all issues therein, or, in its discretion, may remand all matters in which state law predominates.

29 U.S.C. § 1441(c).

### A.      The Parties' Arguments on the Remand Motion

Christie has moved for remand under 29 U.S.C. 1441(c).  Christie asserts that this Court has discretion to remand this entire case to state court because the Complaint pleads violations of New Jersey statutory and common law against PSE&G and the Local 94 Defendants, even though Christie simultaneously acknowledges that his claims against the IBEW and Local 94 for breach of the IBEW Constitution and Local 94 bylaws are federally based.  The Local 94 Defendants counter that Christie's Complaint alleges that the IBEW and the Local 94 Defendants "violated the IBEW Constitution and the Local 94 bylaws by willfully and intentionally failing to prosecute Christie's discharge to arbitration" (Compl. ¶ 27), and that Christie's pleading thus states a claim for breach of the duty of fair representation owed by a Union to a represented employee.  The Local 94 Defendants assert that a claim against a union for breach of the duty of fair representation arises under Section 301 of the LMRA, and that the United States Supreme Court has established that the duty of fair representation imposed by the LMRA completely preempts and displaces state law.  (*See* Defs.' Br. Opp'n Remand 9 (citing *Vaca v. Sipes*, 386 U.S. 171, 177 (1967)).)

PSE&G also opposes Christie's motion to remand on the additional ground that Christie's claims against the Employer Defendants for wrongful discharge necessarily implicate the collective bargaining agreement that PSE&G entered into with Local 94, in particular, the Drug Testing Agreement.  PSE&G asserts that "[b]y pleading that his termination as a recovering drug addict is discriminatory, Andre Christie has intertwined his statutory handicap claim with the [Drug Testing Agreement]."  (PSE&G Br. Opp'n Remand 5.)  PSE&G argues that, in order to resolve the "statutory question" of wrongful discharge under the NJLAD, Christie's claim

"depends on an interpretation, applying federal common law, of Local 94's contract" with PSE&G. (*Id.* at 5-6.) Thus, PSE&G argues that Christie's discriminatory discharge claim is, in actuality, a claim for breach of the collective bargaining agreement, and is also completely preempted by federal law.

### B. This Court's Authority to Remand under 28 U.S.C. § 1441(c)

The Third Circuit has stated that 28 U.S.C. § 1441(c) grants "the district court only a limited authority to remand a case." *Borough of W. Mifflin v. Lancaster*, 45 F.3d 780, 786 (3d Cir. 1995). The Third Circuit has interpreted the discretionary remand provision of § 1441(c) to authorize a district court, upon a determination that at least one "separate and independent" claim in the action establishes federal question jurisdiction justifying removal of that claim to federal court, to either: 1) determine all issues connected with the case; or 2) remand *only those claims in which state law predominates. Id.* at 786-87. Moreover, when state claims arise from "an interrelated series of events or transactions" or "derive from a common nucleus of operative fact" as do the claims over which independent federal jurisdiction exists, they do not constitute "separate and independent" claims that may be remanded to state court under § 1441(c). *Id.* at 786.

Contrary to Christie's assertions, Section 1441(c) does not provide authority for remanding an *entire case*, because the application of Section 1441(c) presupposes that the case contains at least one "separate and independent" federal claim that has been properly removed to federal court; consequently, any such properly-removed federal claim cannot be remanded. *Id.* at 787 (rejecting theory that district court could remand entire case, including federal question claims, under §1441(c); holding that "the district court's discretion to remand under §1441(c) can

pertain only to those *state law claims* which the district court could decline to hear under 28 U.S.C. § 1367"). Thus, a discretionary remand under Section 1441(c) necessarily requires the district court to retain jurisdiction over federal claims, while remanding predominantly state-based claims, resulting in the splitting of an action into separate federal and state actions.

    **C.**    **Christie's Motion for Remand Is Meritless Because Several of the Claims Are Federal in Nature and Federal Jurisdiction Properly Exists for this Action**

In the case before the Court, several of the claims warrant federal question jurisdiction, thereby precluding remand of this case in its entirety. Christie's claim against the Local 94 Defendants for violation of the IBEW Constitution and Local 94 bylaws is governed by federal law. *See Lewis v. Int'l Bhd. of Teamsters Local No. 771*, 826 F.2d 1310, 1314 (3d Cir. 1987) (holding that "a federal court has jurisdiction under section 301(a) [of the LMRA] over suits brought by an individual union member against his or her local union or the international union for *violation of a union constitution*") (emphasis added). Even Christie's counsel acknowledges the federal nature of the claim. (*See* Certif. of Anthony Riposta, Esq. Supp. Remand ¶ 10 ("The only claim that arguably comes within the purview of the [LMRA], 29 U.S.C. § 185(a), is the claim against Local 94 for failing to abide by the [IBEW] Constitution and Local 94's bylaws.").) Consequently, this Court's review of Christie's claim for violation of the IBEW Constitution and Local 94 bylaws is valid because the federal statutory authority that governs the claim, 29 U.S.C. § 185(a), provides a basis for federal question jurisdiction under 28 U.S.C. § 1331.

Furthermore, Christie's claims against the Local 94 Defendants for violation of the NJLAD and the NJFMLA are also subject to federal jurisdiction, due to the preemptive effect of the LMRA. Christie's claims against the Local 94 Defendants rest upon Christie's assertion that Local 94 failed to prosecute his grievance to arbitration for discriminatory reasons. (*See* Compl.

¶ 27.) This contention is a classic expression of a claim for breach of the duty of fair representation. In *Vaca v. Sipes*, 386 U.S. 171, 186 (1967), the Supreme Court held that a discharged employee's complaint, filed in state court, alleging that a union has arbitrarily, capriciously and unreasonably failed to take his grievance to arbitration, alleges a breach by the union of a duty grounded in federal statutes and as such is governed by federal law. As noted by the Supreme Court in *Vaca*, a union's "authority to represent all members of a designated unit includes a statutory obligation to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." 386 U.S. at 177. Accordingly, the Supreme Court held that a breach of the statutory duty of fair representation occurs "when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." *Id.* at 190. The Supreme Court made clear that the employee's right to bring suit against the union in federal court arises under Section 301 of the LMRA. *Id.*

Despite Christie's attempt to frame his claims against the Local 94 Defendants under the rubric of New Jersey statutory law, the preemptive effect of the LMRA supplants any state-law bases for these claims, and mandates that Christie's claims are governed by Section 301 of the LMRA, 29 U.S.C.§ 185. As noted by the Third Circuit,

> [t]he Supreme Court has made it clear that one cannot avoid federal preemption of alleged state law claims by artfully phrasing the language in the complaint. "It is the conduct being regulated, not the formal description of governing legal standards, that is the proper focus of concern."

*Johnson v. United Food & Commercial Workers*, 828 F.2d 961, 967 (3d Cir. 1987) (quoting *Amalgamated Ass'n of Street Elec. Ry & Motor Coach Employees of Am. v. Lockridge*, 403 U.S. 274, 292 (1971)). Accordingly, Christie's claims against the Local 94 Defendants are governed

by federal law, and are properly before this Court on the basis of federal question jurisdiction under 28 U.S.C. § 1331.

Finally, with regard to Christie's Amended Complaint against PSE&G for breach of what Christie characterizes as a "written employment agreement" dated October 3, 2002, this claim also implicates federal law. PSE&G challenges Christie's description of the October 3, 2002 document as a "written employment agreement." PSE&G asserts that the October 3 document is in fact a "three year letter" – a notification pursuant to the Drug Testing Policy that was a product of collective bargaining between IBEW and PSE&G.

Christie did not attach the alleged "written employment agreement" to his pleadings, despite his reliance thereon, but the Amended Complaint described it as making Christie "subject to drug and alcohol testing during [a] three year period." (Am. Compl. ¶ 33.) However, PSE&G's counsel, in papers submitted in opposition to remand, has included a copy of an October 3, 2002 document addressed to Andre Christie which states, in its entirety:

> Dear Mr. Christie,
>
> Because you have used a controlled substance in violation of Company policy, you will be tested for drugs and alcohol at any time during the following three year period (with a minimum of six unannounced follow-up tests during the first 12 months for CDL holders). Any positive test for drugs or alcohol (.04% B.A.C. or higher) during this period will result in immediate discharge. Any positive finding for alcohol (.02%-.39% B.A.C.) during this period will result in the action outlined in the Agreement on Alcohol and Drug Testing for IBEW Represented Employees.
>
> We are very concerned about your health and safety and that of your co-workers. We hope you realize the seriousness of this matter so you may contribute positively to the Company in the future.

(Certif. of Paul Westerkamp, Esq. Opp'n Mot. Remand, Ex. C.) Even a cursory review of the above document reveals that it is not a "written employment agreement" in and of itself, but is

11

obviously a notification pursuant to the Drug Testing Policy, notably because the letter itself actually refers to and appears to incorporate "actions outlined in the 'Agreement on Alcohol and Drug Testing for IBEW Represented Employees' [the Drug Testing Policy]."[2]  *Id.*  Thus, to the extent that Christie asserts a claim for "breach" of the October 3, 2002 document, which itself refers to a collectively-bargained agreement, Christie's putative "breach of contract" claim constitutes a claim for breach of the collective bargaining agreement between PSE&G and IBEW.  Accordingly, this claim, as a classic expression of the "wrongful discharge" component of an employee's "hybrid action" for wrongful discharge/breach of a collective bargaining agreement against the employer and breach of the duty of fair representation against a union, is likewise subject to the jurisdiction of the federal courts by virtue of the preemptive effect of Section 301 of the LMRA.  *See Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 589 n.5 (3d Cir.

---

[2]  This Court has the authority to review the October 3, 2002 document, even though it is not part of the pleadings, because Christie's remand motion presents a challenge to this Court's jurisdiction, and as such, under the procedures for jurisdictional challenges under Rule 12(b)(1), the Court may look to documents outside the pleadings in order to assess jurisdictional facts sufficient to assure the Court of the propriety of its adjudication of a particular claim.  *See Biase v. Kaplan*, 852 F. Supp. 268, 277 (D.N.J. 1994) (noting that consideration of a motion challenging subject matter jurisdiction need not be limited to the pleadings; "conflicting written and oral evidence may be considered and a court may decide for itself the factual issues which determine jurisdiction").

Because Christie's Amended Complaint for "breach" of the October 3, 2002 document may implicate state or federal law, depending on the interpretation of the October 3, 2002 document as either a written employment agreement or a notice pursuant to a collective bargaining agreement, it is appropriate for this Court to analyze the October 3, 2002 document in order to determine facts regarding the propriety of this Court's jurisdiction over Christie's Amended Complaint.

Moreover, this Court can properly consider the October 3, 2002 document in the context of a motion to dismiss because, although it was not attached as an exhibit to Christie's pleadings, it is integral to Christie's Amended Complaint, and Christie has not denied its authenticity.  *See Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196-1197 (3d Cir. 1993) (holding that "a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document").

2005) (noting that "[a] hybrid section 301 action is one in which a union member sues his or her employer for breaching its contractual obligations under the collective bargaining agreement and the union for breaching the duty of fair representation").

In light of the foregoing, it is clear that despite his efforts to avoid invoking federal jurisdiction, Christie has nevertheless advanced several claims that arise under or otherwise implicate federal law.  The remaining state law claims are properly before this Court as supplemental claims under 28 U.S.C. § 1367.  Because all of Christie's claims (including the putative state-law claims under the NJLAD and NJFMLA) arise out of a "common nucleus of operative facts" and an "interrelated series of events or transactions" (i.e., Christie's failure to submit to drug testing, which resulted in subsequent discharge by PSE&G and the union's failure to advance Christie's grievance to arbitration), this Court lacks the authority to remand any of Christie's state-law claims.  *See Borough of W. Mifflin*, 45 F.3d at 786.  Furthermore, even if this Court had authority to split this action into simultaneous federal and state proceedings, principles of judicial efficiency and economy and the risk of inconsistent results would militate against such a result.  Accordingly, Christie's motion for remand is denied.

**II.     The Local 94 Defendants' Motion to Dismiss**

The Local 94 Defendants have moved to dismiss Christie's claims under Rule 12(b)(6), asserting that the claims against them are barred on statute of limitations grounds.  A court may dismiss a complaint under Rule 12(b)(6) for failure to state a claim where it appears beyond doubt that no relief could be granted under any set of facts which could be proved consistent with the allegations.  *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Conley v. Gibson*, 355 U.S.

41, 45-46 (1957). "A court may dismiss a complaint for failure to state a claim, based on a time-bar, where 'the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations.'" *Bieregu v. Ashcroft*, 259 F. Supp. 2d 342, 355 n.11 (D.N.J. 2003) (quoting *Bethel v. Jendoco Constr. Co.*, 570 F.2d 1168, 1174 (3d Cir. 1978)). The Court looks to the allegations of the Complaint when reviewing the Complaint for dismissal on statute of limitations grounds: "When reviewing a Rule 12(b)(6) dismissal on statute of limitations grounds, we must determine whether the time alleged *in the statement of a claim* shows that the cause of action has not been brought within the statute of limitations." *Cito v. Bridgewater Twp. Police Dep't*, 892 F.2d 23, 25 (3d Cir. 1989) (emphasis in original).

The Local 94 Defendants assert that Christie's claims against them, which include claims pleaded under the NJLAD and NJFMLA, are duty of fair representation claims either directly governed by or subject to the preemptive effect of Section 301 of the LMRA. Thus, the Local 94 Defendants assert that Christie's claims against them are subject to the six-month statute of limitations for duty of fair representation claims under the LMRA. However, Christie's Complaint does not state on its face a date or event from which this Court can measure the running of the statute of limitations. Indeed, Christie's Complaint simply indicates that the Local 94 Defendants "violated the IBEW Constitution and the Local 94 bylaws by willfully and intentionally failing to prosecute Christie's discharge to arbitration." (Am. Compl. ¶ 27.) This indicates that the statute of limitations issue cannot be properly resolved on a motion to dismiss, because there is no time or triggering event alleged in the Complaint, and the Court may not rely on matters outside the pleadings to decide such a motion. *See Beverly Enters. v. Trump*, 182 F.3d 183, 190 (3d Cir. 1999) (noting that "[i]t is well-settled that in deciding a motion to dismiss,

courts generally may consider only the allegations contained in the complaint, exhibits attached thereto, and matters of public record"); *see also Eli Lilly & Co. v. Roussel Corp.*, 23 F. Supp. 2d 460, 475 (D.N.J. 1998) ("[U]nless a Court converts a Rule 12(b)(6) motion into a motion for summary judgment pursuant to Fed. R. Civ. P. 56, the Court cannot consider material outside the pleadings (i.e. facts presented in briefs, affidavits or exhibits).").

This Court notes that the Local 94 Defendants premise their statute of limitations arguments on the theory that the statute commenced running when Christie allegedly received a notice informing him that Local 94 was taking no further action on his grievance. A copy of this notice, dated December 3, 2002, was provided as an exhibit to the Affidavit of Chip Gerrity, which was submitted in the context of the Local 94 Defendants' papers in opposition to Christie's motion for remand and in support of the motion to dismiss. (*See* Gerrity Aff., Ex. 8.) While this Court has reviewed the document in the context of the remand motion, this Court does not have the authority to consider that extrinsic document on a motion to dismiss. *See Beverly Enters.,* 182 F.3d at 190; *see also Franklin v. Nat'l Mar. Union*, No. 91-480, 1992 U.S. Dist. LEXIS 14167, at *3 (D.N.J. Jan. 15, 1992) (refusing to grant motion to dismiss, though noting that document submitted on motion appeared to support running of limitations period, reasoning that "on a motion to dismiss the Court could not consider any evidence outside plaintiff's complaint").

While the Court cannot resolve the motion by considering the document proffered by the Local 94 Defendants, the Court does note that Christie does not appear to challenge the authenticity of the notice from Local 94; moreover, in opposition to the motion, Christie asserts only that his claims are not preempted by the duty of fair representation under the LMRA, and

15

are thus not subject to the six-month limitation period for fair representation claims. Significantly, Christie has not indicated that resolution the statute of limitations issue requires further discovery.

Based on the foregoing, it appears that the Local 94 defendants have advanced a time-bar argument that, while inappropriate for resolution on a motion to dismiss, may be appropriate for resolution on summary judgment if the evidence therefor is properly submitted to the Court. This Court has discretion to convert the motion to dismiss under Rule 12(b)(6) into a motion for summary judgment under Rule 56 "by considering materials extrinsic to the pleadings." *Kurdyla v. Pinkerton Sec.*, 197 F.R.D. 128, 131 (D.N.J. 2000) (citing Fed. R. Civ. P. 12(b); *Kulwicki v. Dawson*, 969 F.2d 1454, 463 (3d Cir. 1992); and *Childs v. Meadowlands Basketball Assocs.*, 954 F. Supp. 994, 997 (D.N.J. 1997)). In the Third Circuit, "[w]hen a District Court decides to convert a motion to dismiss into a motion for summary judgment, it must provide the parties 'reasonable opportunity' to present all material relevant to a summary judgment motion." *In re Rockefeller Ctr. Props. Sec. Litig.*, 184 F.3d 280, 287-88 (3d Cir. 1999) (citing Fed. R. Civ. P. 12(b)). "The parties can take advantage of this opportunity only if they have "notice of the conversion." *Id.* (citing *Rose v. Bartle*, 871 F.2d 331, 340 (3d Cir. 1989)). In accordance with the above precedent, the parties are hereby notified that this Court intends to convert the Local 94 Defendants' motion to dismiss under Rule 12(b)(6) into a summary judgment motion under Rule 56.

Pursuant to this conversion, the Local 94 Defendants will have 15 days from the entry of this order to submit a statement pursuant to Local Civil Rule 56.1, a supplemental brief not to exceed ten pages, and any affidavits, documents or other materials that they deem relevant to any

statute of limitations defense against Christie's claims. In response, Christie will have 15 days thereafter to submit any responsive briefs, affidavits, documents or other materials in opposition to the converted motion. There shall be no reply papers submitted. Accordingly, this Court will defer analysis of the arguments presented in the Local 94 Defendants' motion to dismiss, and will address those arguments in the context of a summary judgment analysis upon completion of the parties' submission of any additional materials on the statute of limitations issue.

### III.     PSE&G's Motion to Dismiss

PSE&G has moved to dismiss Christie's claims against it under the NJLAD and NJFMLA, arguing that Christie's NJLAD claim is deficient because Christie "failed to plead sufficient facts from which it may be concluded that he was handicapped" and that Christie's NJFMLA claim fails because Christie did not provide 15 days' notice of his absence from work to care for his son, and has not provided sufficient specifics regarding an "emergent circumstance" which would exempt his absence from work from the 15-day notice requirement. (*See* PSE&G's Br. Supp. Mot. Dismiss 3.) These arguments are premised on factual, as opposed to legal, deficiencies in pleading. The burden of persuasion on a Rule 12(b)(6) motion to dismiss is a heavy one, and factual deficiencies such as those cited by PSE&G are not sufficient to justify dismissal of a claim before discovery has commenced.

The pleading requirements of the Federal Rules "are based on notice pleading rather than fact pleading." *Universe Tankships, Inc. v. United States*, 528 F.2d 73, 75 (3d Cir. 1975). It is well-settled that a plaintiff need not plead evidence, and a simple statement of the claim is sufficient to put a defendant on notice of the nature of the claims. *See Bogosian v. Gulf Oil*

17

*Corp.*, 561 F.2d 434, 446 (3d Cir. 1977) (holding that a plaintiff need not plead evidence, and need not plead the facts that serve as the basis for the claim); *see also Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir. 1996) (holding that a "complaint will be deemed to have alleged sufficient facts if it adequately puts the defendants on notice of the essential elements of the plaintiffs' cause of action"). Christie's pleadings, while somewhat lacking in specifics regarding the NJLAD and NJFMLA claims, nevertheless meet this minimum requirement. PSE&G's arguments in support of the motion to dismiss are therefore unavailing, as they rely upon factually-undeveloped issues in a case in which discovery has, to the Court's knowledge, not even begun.

Perhaps sensing that its motion to dismiss stood on shaky legal grounds, PSE&G seizes in its reply papers upon Christie's submission of extrinsic materials in opposition to the motion to imply that conversion of the motion to dismiss into a summary judgment motion is a *fait accompli*. (PSE&G Reply Br. Supp. Mot. Dismiss 1 ("Inasmuch as plaintiffs have submitted affidavits as part of their opposition papers, defendant understands that the Court will now treat its motion to dismiss as one for summary judgment.").) However, conversion of a Rule 12(b)(6) motion into a Rule 56 motion is a matter within the Court's discretion, and cannot be compelled by mere concession or agreement of the parties, nor is it mandated by the parties' mutual submission of extrinsic materials. *See Kurdyla*, 197 F.R.D. at 131.

PSE&G's request to convert its motion to dismiss into a motion for summary judgment motion is premature. PSE&G's arguments in favor of summary judgment, as reflected in its reply brief, are premised on complex factual analyses that this Court is unwilling to undertake in a case in which discovery has not even commenced. As noted by the district court in *Kurdyla*, where the arguments on summary judgment involve complex facts, conversion to summary

judgment is inappropriate where discovery has not yet taken place. *Id.* Unlike the statute of limitations argument raised by the Local 94 Defendants, which this Court has decided is appropriate for conversion to summary judgment because it is premised on the single factual question of when the statue of limitations began to run on the claims against the Local 94 Defendants, PSE&G's opposition to Christie's NJLAD and NJFMLA claims is based on multifarious, complicated factual disputes that warrant discovery before resolution. Indeed, the only case that PSE&G relies upon in apparent support for its motion to dismiss the NJLAD claim was itself resolved on a factual basis on a summary judgment motion after completion of full discovery. *See Bosshard v. Hackensack Univ. Med. Ctr.*, 345 N.J. Super. 78, 90 (App. Div. 2001). Moreover, Christie has indicated that fuller expression of his claims under the NJLAD and NJFMLA may be not be possible at this stage because discovery has not commenced and relevant facts may be in the hands of PSE&G. (*See* Pl.'s Br. Opp'n Mot. Dismiss 12.) Accordingly, even if this Court were to consider converting PSE&G's motion to dismiss into one for summary judgment, the Court would be obligated to provide the parties with an opportunity for discovery of relevant facts. *See Bogosian*, 561 F.2d at 444 (noting that "where facts are in possession of the moving party a continuance of a motion for summary judgment for purposes of discovery should be granted almost as a matter of course"). Such a continuance would no doubt be lengthy, owing to the factual complexity of the issues as framed, and the absence of discovery in this case to date. Thus conversion of the motion to dismiss would result in extensive delay that militates against conversion to summary judgment at this time. Accordingly, this Court declines PSE&G's invitation to convert the motion to dismiss into a motion for summary judgment, and further denies PSE&G's motion to dismiss as lacking merit.

*Conclusion*

For the foregoing reasons, it is hereby ORDERED on this __th day of February 2006 that Plaintiff's motion for remand (Docket No. 5) is DENIED.  It is FURTHER ORDERED that the Local 94 Defendants' motion to dismiss (Docket No. 12) will be converted into a motion for summary judgment, and this Court will address the arguments raised in the Local 94 Defendants' motion after the parties submit additional materials appropriate to a motion for summary judgment.  The Local 94 Defendants will have 15 days from the date of the entry of this Opinion and Order to submit any additional materials regarding the statute of limitations issue, and Christie will have 15 days thereafter to submit any responsive materials.  It is FURTHER ORDERED that PSE&G's motion to dismiss (Docket No. 11) is DENIED.


Newark, New Jersey
Dated:  February 23, 2006                                              s/ Harold A. Ackerman, U.S.D.J.